# IN THE COURT OF APPEALS OF IOWA

No. 20-1260
Filed December 16, 2020

**IN THE INTEREST OF K.W., E.W., Q.W., J.W., and M.K.,**
**Minor Children,**

**C.W., Mother,**
　　　　Appellant.
_____

　　Appeal from the Iowa District Court for Black Hawk County, Stephen C. Clarke, Judge.

　　A mother appeals the termination of her parental rights to her children. **AFFIRMED.**

　　Michelle Jungers of Iowa Legal Aid, Waterloo, for appellant mother.

　　Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

　　Tammy L. Banning, of Juvenile Public Defender's Office, Waterloo, attorney and guardian ad litem for minor children.

　　Considered by Bower, C.J., and Vaitheswaran and Greer, JJ.

**VAITHESWARAN, Judge.**

A mother appeals the termination of her parental rights to five children, born in 2010, 2011, 2014, 2017, and 2019.[1]

The department of human services began investigating the mother in 2018 after she left the children home alone.  She eventually pled guilty to three counts of child endangerment and received a deferred judgment.[2]

In time, other concerns surfaced, including physical injuries sustained by one of the children.  The district court ordered the children removed from the mother's custody.  The children were adjudicated in need of assistance.

In 2019, the district court returned the children to the mother under the department's protective supervision.  Ten days later, the department applied to have the children removed again after the mother tested positive for cocaine.  The district court granted the application.

The mother continued to receive reunification services, including individual therapy and substance-abuse treatment.  She was also followed by her probation officer, and she participated in family treatment court.  Despite this umbrella of services and oversight, the mother submitted another positive cocaine test.

In late 2019, the mother gave birth to the fifth child named in the termination petition.  The mother and the child tested positive for cocaine.  The newborn was

---

[1] A sixth child, born in 2009, was the subject of child-in-need-of-assistance proceedings but was ultimately placed with her father and was not named in the termination petition.

[2] The child born in 2009 was one of the children left alone.  The youngest child had yet to be born.

removed from the mother's custody, and all five children remained out of her custody through the remainder of the proceedings.

The State filed a petition to terminate the mother's parental rights to the five children. The district court granted the petition.

On appeal, the mother contends the district court should have afforded her six additional months "to demonstrate her safe lifestyle." In that context, she also asserts "this termination is not in the best interests of the children" and "the evidence does not definitively show that 'the children will not be able to be returned to the custody of a parent within a reasonable period of time' Iowa Code § 232.116(1)(k)(3)" (2020). We will begin with her last contention.

The district court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(f) and (h), not (k). However, the termination element set forth in section 232.116(1)(k)(3) is similar to the fourth element of section (f) and (h). That element requires proof the "child cannot be returned to the custody of the child's parent[]." The language has been construed to require parental fitness "at the time of the termination hearing." *In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018). The children could not have been returned to the mother at the time of the termination hearing because she was housed at a residential correctional facility that disallowed them.

We turn to the crux of the mother's appeal—whether the district court should have given her six additional months to work toward reunification. *See* Iowa Code § 232.104(2)(b). The mother's probation and parole officer testified the mother had "not successfully completed the program" at the residential facility, had "incurred numerous reports . . . for different rule violations," and would not

complete supervised probation before January 2022. Although one of the mother's therapists spoke highly of her progress and opined she would be "very successful" at living a sober lifestyle, the mother's compliance with drug testing suggested otherwise. For example, the mother failed to appear for all but one of the twice-weekly tests scheduled in February 2020, did not appear for five of the tests in March, and provided a dilute sample in April, which the department deemed positive. Given the length and breadth of services provided up to the termination hearing and the mother's inability to maintain a sustained period of sobriety, a six-month extension was not warranted.

We are left with the mother's contention that termination was not in the children's best interests. *See id.* § 232.116(2). The court appointed special advocate reported that the mother "repeatedly ma[de] promises she fail[ed] to keep." At the termination hearing, she discussed one of the older children's lack of trust in the face of these broken promises. The department employee overseeing the case similarly stated that the children were "really struggling . . . emotionally and mentally." She cited the mother's receipt of "services for over two years" and her relapses after "a short period of time." In her view, the mother was "able to maintain herself only when she [was] in a controlled environment" and, even then, she had a relapse. She testified, "[I]f she can't maintain her behavior and her uses when she's in a controlled environment it's going to make it even more difficult for her to stay clean and sober when she's not in a controlled environment." On our de novo review, we conclude termination of the mother's parental rights was in the children's best interests.

**AFFIRMED.**